# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of:

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number 414-766-3794 (TARGET CELLULAR DEVICE 2)

Case No. 26-877M(NJ)

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Eastern District of Wisconsin:

See Attachment A2.

I find that the affidavit(s) or any recorded testimony, establish probable cause to search and seize the person or property described above and that such search will reveal:

See Attachment B2.

**YOU ARE COMMANDED** to execute this warrant ON OR BEFORE 4/23/2026 *(not to exceed 14 days)*
☐ in the daytime between 6:00 a.m. and 10:00 p.m. ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the Honorable Nancy Joseph.
*(United States Magistrate Judge)*

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☒for 30 days (not to exceed 30) ☐ until, the facts justifying, the later specific date of ____________.

Date and time issued: 4/9/2026 @ 2:37 p.m.

Nancy Joseph
*Judge's signature*

City and State: Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

**Return**

| Case No: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of:

Inventory of the property taken and/or name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the undersigned judge.

Date: ______________________________

______________________________
*Executing officer's signature*

______________________________
*Printed name and title*

Subscribed, sworn to, and returned before me this date:

Date: ______________________________

______________________________
*United States Magistrate Judge*

# ATTACHMENT A2

This warrant authorizes the use of the electronic investigative technique described in Attachment B1 to identify the location of the cellular device assigned phone number 414-766-3794, whose wireless provider is T-Mobile and whose listed subscriber is Scott Williams ("Target Cellular Device 2").

## ATTACHMENT B2

Pursuant to an investigation of Scott WILLIAMS for a violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, this Warrant authorizes the officers to whom it is directed to determine the location of Target Cellular Device 2 by collecting and examining:

1. radio signals emitted by Target Cellular Device 2 for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by Target Cellular Device 2 in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

## CERTIFICATION BY ATTORNEY UNDER 18 U.S.C. § 3122(b)

In support of this warrant application, and pursuant to 18 U.S.C. § 3122(b) I state that I, Patricia Daugherty, am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure. I certify that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration (DEA).

I declare under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

Executed on April 8, 2026, at Milwaukee, Wisconsin.

PATRICIA DAUGHERTY
Assistant United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Ave, Room 530
Milwaukee WI 53202
414-297-1700

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of:

The Use of a Cell-Site Simulator to Locate the Cellular Device Assigned Call Number 414-766-3794 (TARGET CELLULAR DEVICE 2 )

Case No. 26-877M(NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A2.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B2.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1), 843(b) & 846 (Possession with intent to distribute/distribution of controlled substances, use of a communication facility in furtherance of drug trafficking, and conspiracy to distribute controlled substances)

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, the attorney for the government has submitted with this application a certification that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration (DEA).

☒ Delayed notice of 30 days (give exact ending date if more than 30 days: ________________) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PATRICK BECKMAN Digitally signed by PATRICK BECKMAN Date: 2026.04.08 11:01:40 -05'00'

*Applicant's signature*

Patrick Beckman, DEA Special Agent

*Printed Name and Title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone:

Date: 4/9/2026

*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Patrick Beckman, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B1, to determine the location of the cellular device assigned call number 312-459-9431 (**TARGET CELLULAR DEVICE 1**) which is described in Attachment A1 and to employ an electronic investigative technique, which is described in Attachment B2, to determine the location of the cellular device assigned call number 414-766-3794 (**TARGET CELLULAR DEVICE 2**) which is described in Attachment A2. **TARGET CELLULAR DEVICE 2** and **TARGET CELLULAR DEVICE 2** are collectively referred to herein as the **TARGET CELLULAR DEVICES.**

2. I am an investigator and law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. That your affiant is currently employed as a Special Agent with the Drug Enforcement Administration (DEA), Chicago Division, Milwaukee District Office. I was hired by the DEA in October of 2016, as a Special Agent. In November of 2016, I attended a 16-week Basic Agent Training Course at the DEA Academy located in Quantico, Virginia. Upon graduation from the DEA academy in March of 2017, I was assigned to the Chicago Division, Rockford Resident Office as a Special Agent tasked with investigating violations of state and federal drug

trafficking laws. I transferred to the Green Bay Resident Office in September of 2022 and the Milwaukee District Office in 2025. Prior to my employment with the DEA, I served in the United States Marine Corps / Reserve from 2010 to 2015 and was a Trooper with the Illinois State Police from 2011 to 2016. I attended the Illinois State Police Academy located in Springfield Illinois from August of 2011 through March of 2012. Upon completion I was certified as a law enforcement officer in the State Of Illinois. My duties as a trooper included enforcement of the Illinois Compiled Statutes. This also included violations of the Illinois Controlled Substances Act. I attended Marquette University and graduated with a Bachelor of Arts degree with a major in International Affairs.

4. As part of my duties, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. By virtue of my employment as a Special Agent and prior law enforcement experience, I have knowledge of and/or performed various tasks, which include, but are not limited to:

a. I have functioned as both a case agent and co-case agent in numerous investigations into illegal drug distribution conspiracies, including Title III investigations.

b. I have interviewed witnesses, confidential human sources (CHS) and sources of information (SOI) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments).

c. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States.

d. I have also relied upon informants to obtain controlled substances from dealers.

e. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized.

f. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

g. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded.

h. I know that drug traffickers often use electronic equipment and wireless telephones to conduct drug trafficking operations.

i. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

j. I know that drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate drug trafficking.

k. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets to avoid scrutiny from law enforcement officials.

5. My knowledge of the facts and circumstances contained within this affidavit is based on my personal investigation, as well as reports made to me by other law enforcement agencies, including agents of the Drug Enforcement Administration, local city and/or county law enforcement, information obtained from governmental institutions, information obtained from non-governmental institutions, including banking institutions located in Wisconsin and elsewhere, and various other reports obtained under order or subpoena. The statements contained in this affidavit are based either on my personal knowledge or information

obtained from other law enforcement officers and witnesses. Throughout this affidavit, reference will be made to case "agents." Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interview(s) and/or controlled buys with a confidential source (CS) whose reliability is established separately herein. This affidavit does not set forth every fact discerned throughout the investigation; rather, it contains a summary of the investigation to date and sets for the only those facts that I believe is necessary to establish the foundation for probable cause for an order authorizing the requested warrants.

6. One purpose of applying for these warrants is to determine with precision the **TARGET CELLULAR DEVICES**'s locations. However, there is reason to believe the **TARGET CELLULAR DEVICES** are currently located somewhere within this district because case agents have observed the users of the two **TARGET CELLULAR DEVICES** within this district on a routine basis over the last 60 days. Pursuant to Rule 41(b)(2), law enforcement may locate the **TARGET CELLULAR DEVICES** outside the district provided the device(s) is within the district when the warrant is issued.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Scott WILLIAMS and Djuan WILLIAMS haves violated Title 21, United States Code, Sections 841(a)(1), 843(b), and 846. Scott WILLIAMS and Djuan WILLIAMS were charged with violations of Title 21, United States Code, Sections 841(a)(1and 846 on April 7, 2026 and are the subjects of arrest warrants issued on April 7, 2026. There is also probable cause to believe that the **TARGET CELLULAR DEVICES**'s locations will assist law

enforcement in arresting Scott WILLIAMS and Djuan WILLIAMS, who are each a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant submission therefore includes all the information required to be included in a pen register order, see 18 U.S.C. § 3123(b)(1), and the attorney for the government is submitting along with this submission a certification under, 18 U.S.C. § 3122(b).

**PROBABLE CAUSE**

9. In the fall of 2025, the Drug Enforcement Administration (DEA) Milwaukee District Office initiated an investigation into Antonio WESLEY-CARTER. Said investigation subsequently revealed that WESLEY-CARTER is a large-scale distributor of various controlled substances to include cocaine, MDMA, and methamphetamine and that he employs others, including Scott WILLIAMS and Djuan WILLIAMS, to distribute drugs on his behalf.

10. Information was developed from a Confidential Source (CS) that identified WESLEY-CARTER as a kilogram quantity drug distributer in the Milwaukee, WI area. The CS relayed that WESLEY-CARTER utilized a specific number to facilitate drug transactions. The CS relayed that the CS knew this from prior drug transactions that occurred between the CS and WESLEY-CARTER prior to the CS's cooperation wherein the CS contacted WESLEY-CARTER at that number to arrange to purchase controlled substances. The CS was shown a photograph of WESLEY-CARTER and the CS identified the person in the photograph as the person from whom the CS purchased controlled substances.

11. Beginning in October of 2025, the CS made statements against the CS's penal interest. The CS has the following criminal convictions: disorderly conduct, possession of THC and drug paraphernalia. The CS has not been promised consideration for providing law enforcement with information on on-going criminal activity. Thus far, the information provided by the CS has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the CS's cooperation. The CS has provided information that has led to the seizure of controlled substances and the arrest of individuals. The CS also participated in at least two controlled buys. Following the buys, the CS was debriefed by case agents and the CS's versions of events were later corroborated by case agents' review of covertly recorded audio of the controlled buy transactions (as well as video of the first controlled buy). The CS has charged and pending felony drug charges and is cooperating with law enforcement in hopes of receiving judicial and prosecutorial consideration. Within the context of the information detailed and relied upon for purposes of this Affidavit, case agents believe that the CS is credible and the CS's information is reliable.

12. Based on my training and experience, I know that a "controlled buy" is a law enforcement operation in which a confidential source (CS) purchases controlled substances from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded buy money. When a confidential source (CS) is used, the CS is searched for contraband, weapons, and money before the operation. The CS is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the CS meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The CS is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the CS while under the direction and control of case agents are recorded. The purchased controlled substances are then weighed

and field tested by case agents. To the extent that I refer to a controlled buy below, it was conducted in this manner unless otherwise noted.

**November 2025 Controlled Buy at 2743 N. 29th Street**

13. On or about November 18, 2025, the CS, at the direction of case agents, called WESLEY-CARTER's phone number in order to inquire about the purchase of cocaine. Following the phone call, the CS contacted case agents and relayed that the CS had spoken to WESLEY-CARTER and WESLEY-CARTER agreed to provide three ounces of cocaine to the CS for $2,100. Case agents verified that this call was placed to WESLEY-CARTER's phone number by reviewing the CS's telephone and confirming the number that was dialed, but it was not recorded or witnessed by case agents.

14. On or about November 19, 2025, at the direction of case agents, the CS placed another call to WESLEY-CARTER's phone number. Following the phone call, the CS relayed that the CS had talked to WESLEY-CARTER and WESLEY-CARTER was ready for the drug transaction. Case agents verified that this call was placed to WESLEY-CARTER's phone number by reviewing the CS's telephone and confirming the number that was dialed, but it was not recorded or witnessed by case agents.

15. An additional phone call was placed to WESLEY-CARTER's phone number by the CS leading up to the drug transaction to confirm that WESLEY-CARTER would be ready to sell the CS cocaine. This phone call was recorded and witnessed by case agents. Case agents verified that this call was placed to WESLEY-CARTER's phone number by reviewing the CS's telephone and confirming the number that was dialed.

16. On November 19, 2025, in the afternoon, case agents met with the CS. The CS and CS's vehicle were searched for contraband and U.S. Currency with negative results. The

CS was provided with $2,250 of pre-recorded U.S. Currency as well as audio and video recording equipment. At approximately the same time, case agents established surveillance in the area of 2743 N. 29th Street in Milwaukee, Wisconsin. According to the CS, this address was previously utilized by the CS to meet with WESLEY-CARTER for drug transactions prior to the CS's cooperation with law enforcement.

17. Case agents maintained constant visual contact while the CS was enroute to 2743 N. 29th Street. Case agents observed the CS's vehicle park in front of 2743 N. 29th Street. After a short time, case agents observed the CS exit the CS's vehicle and enter 2743 N. 29th Street. After a short time, the CS exited 2743 N. 29th Street and got into the CS's vehicle and departed. Case agents maintained constant visual contact with the CS's vehicle while enroute to a predetermined meeting location. Case agents met with the CS at the predetermined meeting location. Case agents retrieved the audio and video recording equipment. The CS turned over a clear plastic bag containing a white chunky substance (suspected cocaine) to case agents. The CS also turned over $150 of pre recorded U.S. Currency. Case agents searched the CS's vehicle and the CS for contraband with negative results.

18. The CS then provided a statement about what occurred within 2743 N. 29th Street. The CS relayed that the CS had entered 2743 N. 29th Street and met with an older black male (later identified as Scott WILLIAMS). The older black male provided the suspected cocaine to the CS and the CS provided $2,100 of pre-recorded U.S. Currency to the older black male. The CS relayed that the CS inquired as to the price of pills. The CS relayed that the older black male called an individual who the CS believed to be WESLEY-CARTER. The older black man then told the CS that the pills (ecstasy pills) were $70 a "jar" (a jar is 100 ecstasy pills). Initially, however, the older black male stated, "the blues" which I believe this to a be a reference to fentanyl pills. The CS clarified for the older black male that the CS was talking about ecstasy pills. The CS also

relayed that the CS saw two plastic bags inside 2743 N. 29th Street near a window sill containing what the CS believed was cocaine.

19. The CS also relayed that upon getting into the CS's vehicle, the CS received a phone call from WESLEY-CARTER's phone number. This call was recorded. Case agents later confirmed this by viewing the call log of the CS's cell phone and observed an incoming call from WESLEY-CARTER's phone number at the approximate time that the CS was seen within the CS's vehicle. The CS relayed that the CS spoke to WESLEY-CARTER (via WESLEY-CARTER's phone number). WESLEY-CARTER clarified that the price for ecstasy pills was $650 for 1,000 pills. Based on my training and experience, I believe that this also confirms that the older black male in the residence contacted WESLEY-CARTER to inquire about the price of the pills requested by the CS. The CS also relayed that the older black male had provided drugs to the CS in the past on behalf of WESLEY-CARTER. This was prior to the CS's cooperation with law enforcement.

20. Case agents reviewed the covert recording made by the CS during the above-described controlled buy. Said recording was consistent with the CS's statement about what occurred concerning the cocaine purchase and discussion regarding the pills. Case agents were able to see the older black male's face in the recording and subsequently identified him as Scott M. WILLIAMS. Case agents identified WILLIAMS as the older black male who provided the cocaine to the CS that the CS had ordered from WESLEY-CARTER.

21. Case agents field tested the suspected cocaine and it tested positive for the presumptive presence of cocaine. Case agents weighed the cocaine and it weighed approximately 90.3 grams.

**January 2026 Controlled Buy at 2511 W. Auer Avenue**

22. On or about January 26, 2026, case agents directed the CS to place a call to WESLEY-CARTER and inquire about purchasing "blues" (fentanyl pills) and "rollers" (ecstasy pills). This call was not recorded as the CS conducted the call prior to meeting with case agents. Case agents would later view the call log of the CS's device and confirm that the call had happened and confirmed that the CS was calling WESLEY-CARTER on WESLEY-CARTER's phone number. According to the CS: During the call, WESLEY-CARTER informed the CS that WESLEY-CARTER did not have any "blues," but stated to the CS that WESLEY-CARTER currently had the "rollers." After the CS spoke with WESLEY-CARTER, the CS immediately called case agents and notified them of the conversation. The CS further stated that during this call, WESLEY-CARTER told the CS that WESLEY-CARTER would provide a new location for the CS to travel to for this purchase. During the time of the call between the CS and WESLEY-CARTER, case agents had been monitoring the GPS location being received on WESLEY-CARTER's phone number. Case agents observed that WESLEY-CARTER's phone number was currently in the area of 3858 N. 98th Street, Milwaukee, WI, which is the residence of WESLEY-CARTER.

23. On this same date, case agents then met with the CS at a predetermined location. During this meeting, the CS and CS's vehicle were searched for contraband and U.S. Currency with negative results. The CS was provided with $650 of pre-recorded U.S. Currency as well as audio and video recording equipment. Case agents also placed a GPS monitoring device inside the CS vehicle to monitor the CS vehicle's location in real time. At the direction of case agents, the CS departed the predetermined meeting location and was directly followed by case agents with a plan for the CS to travel towards 2743 N. 29th Street. Shortly after departing, the CS was directed by case agents to again call WESLEY-CARTER on WESLEY-CARTER's phone number with the purpose of obtaining a meeting location. This call was recorded, and during the

call, WESLEY-CARTER informed the CS that WESLEY-CARTER would be ready to meet in approximately 20 minutes. The CS was not provided with a location at this time and continued traveling in the direction of 2743 N. 29th Street. Approximately 25 minutes after this call, the CS was again instructed to contact WESLEY-CARTER by calling WESLEY-CARTER's phone number. WESLEY-CARTER informed the CS to travel to 2511 W. Auer Avenue. This address was also sent via text message to the CS by WESLEY-CARTER from WESLEY-CARTER's phone number (as verified by case agents after reviewing the CS's device). Case agents would later view this text message and download a copy of this message which was later placed into DEA evidence.

24. In anticipation of the controlled buy, case agents were monitoring location data for WESLEY-CARTER's phone number on January 26, 2026, and noted that WESLEY-CARTER's phone was not in the area of 2743 N. 29th Street. Therefore, case agents expected that the CS would again meet with an intermediary working with WESLEY-CARTER, as the CS did during the earlier buy on November 19, 2025.

25. Once the CS received the address information from WESLEY-CARTER, surveillance units were established in the area of 2511 W. Auer Avenue. However, out of an abundance of caution related to the surveillance consciousness of WESLEY-CARTER, case agents could not position themselves in a manner to see the front door of 2511 W. Auer Avenue. The CS was still being directly followed by case agents and was observed to turn eastbound on W. Auer Avenue from N. 27th Street. Case agents observed the GPS device placed in the CS vehicle show that the CS vehicle came to a stop directly in front of 2511 W. Auer Avenue. The location data obtained from this GPS device would later be downloaded and placed into DEA evidence. Case agents monitoring the cover audio recording device could overhear the CS exiting the CS vehicle and a short time later the CS could be heard talking to another person with a male voice. After a

brief conversation, the CS could then be heard entering the CS vehicle and shutting the door. Shortly after, the GPS location data showed the CS vehicle to depart eastbound on W. Auer Ave at which time case agents observed the CS's vehicle turn southbound from W. Auer Ave onto N. 25th Street.

26. The CS vehicle was directly followed from this area by case agents back to a predetermined meeting location. The CS made no stops and interacted with no one from the time the CS departed the area of 2511 W. Auer Avenue until the CS was at the predetermined location. Once at this location, case agents retrieved the audio and video recording equipment and the GPS device from the CS vehicle. The CS and CS's vehicle were again searched for contraband with negative results. Case agents field tested the multicolored pills and received a presumptive positive test for the presence of MDMA. The pills weighed approximately 479 grams. However, based on the overall investigation, I believe these pills are methamphetamine.

27. The CS provided a statement to case agents as to what had occurred during this purchase: The CS parked the CS vehicle directly in front of 2511 W. Auer Avenue and then walked to the front door of the residence and walked inside. Once inside, a black male with a short haircut and goatee was standing inside already and the CS did not previously know this individual. This unknown black male was on a FaceTime phone call when the CS entered the residence. The black male showed the CS the phone and the CS observed that this unknown black male was on the phone with WESLEY-CARTER. The CS provided the unknown male with the $650 and the black male handed the CS two plastic bags filled with the multicolored pills.

28. Case agents reviewed the covert recording made by the CS during the above-described controlled buy. Said recording was consistent with the CS's statement about what occurred concerning the pill purchase based upon what could be heard on the recording. However, the video did not capture the black male in the residence.

29. Through the investigation, case agents became aware that WESLEY-CARTER was associated with Djuan L. WILLIAMS (DOB: XX/XX/1979). Case agents showed the CS an unlabeled photo of Djuan WILLIAMS and the CS immediately identified Djuan WILLIAMS as the unknown black male that had been inside 2511 W. Auer Avenue Street who was on the Facetime call with WESLEY-CARTER and who provided the CS with the pills.

**March 2026 Controlled Drug and Firearm Purchase at 2511 W. Auer Avenue**

30. On March 2, 2026, the CS met with case agents at a predetermined location. At that time, the CS and CS vehicle were searched for drugs, money, weapons, or other contraband with none located. The CS was given $1,300 prerecorded DEA buy money for the pills and $900 of prerecorded ATF buy money for the firearm. The CS was directed to place a recorded call to WESLEY-CARTER's phone number and let WESLEY-Carter know that the CS was ready for the buy. This call was recorded and case agents observed that the call was made to WESLEY-CARTER's phone number. During the call, WESLEY-Carter told the CS to "pull up" which the CS understood to mean that WESLEY-Carter was ready for the deal. Prior to departing the predetermined location, case agents established surveillance units in the area of 2511 W. Auer Avenue, Milwaukee, WI. As surveillance was being established, the CS departed the predetermined meeting location and was directly followed by case agents to 2511 W. Auer Avenue. At no time was the CS out of view and the CS made no stops or interacted with anyone prior to arriving at 2511 W. Auer Avenue.

31. The CS vehicle was observed parking directly in front of 2511 W. Auer Avenue and the CS remained in the CS vehicle. Shortly after the CS was observed parking, case agents observed gray Volkswagen Atlas with Minnesota Plate SRJ495 traveling northbound on N. 26th Street from Auer Ave. Case agents have previously observed WESLEY-CARTER operating

said vehicle. Shortly after, the Atlas was then observed traveling southbound on N. 25th Street towards Auer Ave, and the vehicle was ultimately observed to park directly behind 2511 W. Auer Avenue. Approximately five minutes after the Atlas observed parking, case agents observed Djuan WILLIAMS exit the front door of 2511 W. Auer Avenue. At that time, the CS was also observed exiting the CS vehicle and entering the front door of 2511 W. Auer Avenue. A short time after the CS entered 2511 W. Auer Avenue, case agents observed through remote video surveillance, a black male subject exit the rear door of 2511 W. Auer Avenue and walk to the Atlas. The black male opened the front passenger door for a moment, appeared to retrieve something, and then walk back inside 2511 W. Auer Avenue using the rear door to the residence. Comparisons were later made by viewing the covert recording devices and case agents were able to positively identify WESLEY-Carter as the black male that had been observed parking the Atlas and retrieving the object from the vehicle.

32. The CS ultimately was observed leaving through the front door of 2511 W. Auer Avenue. Djuan WILLIAMS and WESLEY-Carter were observed leaving at approximately the same time as the CS. WILLIAMS entered a silver in color Hyundai Palisade, Wisconsin Plate AZS-2165 and WESLEY-Carter entered the Atlas and they both departed the area. Visual contact of the CS was briefly lost due to all parties leaving the residence at the same time. Visual surveillance was reestablished with the CS vehicle approximately 3 blocks from the residence. As case agents traveled southbound on N. 27th Street, the Atlas was observed traveling northbound on N. 27th and I clearly observed WESLEY-Carter to be the driver of the vehicle. I later reviewed the covert recording made by the CS of this buy and confirmed that during the brief time when the CS was out of view of case agents after departing the residence, the CS did not make any stops or interact with any other people.

33. Case agents met with the CS at a predetermined location at which time the CS provided a black plastic bag that contained approximately 20 smaller clear plastic baggies each containing approximately 100 multicolored suspected methamphetamine pills. The CS was searched at this time and no additional contraband was located, however the CS stated that the CS had left the handgun inside the CS vehicle for case agents to retrieve. Case agents then located a Glock 45 9mm handgun with a loaded magazine and round in the chamber inside the CS vehicle. The CS vehicle was searched at this time for additional contraband with none located.

34. The CS relayed to case agents that as the CS parked the CS vehicle in front of 2511 W. Auer Avenue, the CS waited in the CS vehicle until the CS saw a black male exit the front door and indicate to the CS to come inside. The CS stated that once inside 2511 W. Auer Avenue, the CS observed "Tone" and the black male to be inside. Case agents have positively identified "Tone" as Antonio WESLEY-Carter and the black male has been previously positively identified as Djuan WILLIAMS. The CS stated that "Tone" (who I believe to be WESLEY-Carter) handed the CS the plastic bag containing the pills once the CS was inside the residence. The CS stated that they then observed that "Tone" (who I believe to be WESLEY-Carter) to be in possession of approximately 1,000 more of the same pills and he then placed these extra pills inside a cabinet near where he had been standing. The CS stated that that "Tone" (who I believe to be WESLEY-Carter) then exited the residence using the back door and was gone for a brief period of time. The CS stated that when that "Tone" (who I believe to be WESLEY-Carter) came back inside 2511 W. Auer Avenue, he had the handgun in his possession and then handed it to the CS. The CS stated that the CS had provided that "Tone" (who I believe to be WESLEY-Carter) with all $2,200 of prerecorded buy money for both the pills and the firearm and then departed 2511 W. Auer Avenue.

35. Case agents reviewed the covert recording made by the CS during the above-described controlled buy. Said recording was consistent with the CS's statement about what occurred concerning the pill and firearm purchase based upon what could be heard on the recording. Case agents were able to observe on the recording that Antonio WESLEY-Carter and Djuan WILLIAMS were both inside the residence and the video matched the statements made by the CS.

36. Case agents then transported the Gock 45 and suspected methamphetamine pills back to Milwaukee DEA for processing. The pills were subjected to a field test that yielded positive results for the presence of amphetamines and the pills had a weight of approximately 997.8 grams.

**March 26, 2026—Execution of Federal Search Warrants**

37. On March 26, 2026, case agents executed federal search warrants at WESLEY-CARTER's residence (3858 N. 98th Street), 2511 W. Auer Avenue residence, and the 2743 N. 29th Street residence. WESLEY-CARTER was arrested at 3858 N. 98th Street. Djuan WILLIAMS and Scott WILLIAMS were not located.

38. The search of **2511 W. Auer Avenue** revealed:

a. A plastic grocery bag containing several clear plastic baggies of multi-colored pills. This bag was located within the northeast bedroom on the floor. Within the same room, officers located mail identifiers for Wesley-Carter as well as license plates that were registered to him.

b. Approximately 294 grams of an unknown white/colorful powder found in the garage.

c. Approximately 58 grams of loose pills in the kitchen.

d. A Taurus model 63 semi-automatic handgun bearing serial number ABL178038. This firearm was located in a cabinet next to the fridge in the kitchen.

e. Numerous empty kilogram wrappers were located inside the residence. These empty wrappers were subjected to a field test and tested positive for the presence of cocaine.

f. An Anderson Manufacturing rifle bearing serial number 19277127. This firearm was located in the northwest bedroom on the floor next to the couch in a case.

39. The suspected methamphetamine pills recovered from the Auer Avenue residence weighed approximately 1638.1 grams.

40. The search of 2743 N. 29th Street revealed:

a. Multiple plastic grocery-style bags containing several clear plastic baggies of multi-colored pills. These bags were located within the master bedroom on the first floor of the residence underneath the bed. These pills were similar, though not identical to those found within the Auer Avenue residence.

b. Approximately 43 grams of an orange powdery substance was located in the second bedroom also located on the first floor of the residence and 27 grams of a white powder was located in this same bedroom. These substances will be lab tested but are suspected to be cutting agent.

41. The suspected methamphetamine pills recovered from the Auer Avenue residence weighed approximately 2261.4 grams.

42. The search of 3858 N. 98th Street revealed approximately 10 long guns and approximately 11 handguns as well as approximately $50,000 in cash (suspected drug proceeds).

**April 7, 2026, indictment of WESLEY-CARTER, Djuan WILLIAMS and Scott WILLIAMS**

43. On April 7, 2026, a Federal Grand Jury located in the Eastern District of Wisconsin returned a true bill indictment of WESLEY-CARTER, Djuan WILLIAMS and Scott

WILLIAMS. They were charged with the following violations: Conspiracy to Distribute 500 grams or more of a mixture and substance containing methamphetamine (Wesley-Carter, S. Williams, and D. Williams), distribution of cocaine (Wesley-Carter and S. Williams), two counts of distribution of 500 grams or more of a mixture and substance containing methamphetamine (Wesley-Carter and D. Williams), possession with the intent to distribute 500 grams or more of a mixture and substance containing methamphetamine (Wesley-Carter, S. Williams, and D. Williams), and possession of a firearm in furtherance of a drug trafficking offense (Wesley-Carter). A Federal arrest warrant was issued for Djuan WILLIAMS and Scott WILLIAMS. Said arrest warrants remain outstanding at this time.

**Cellular Phone information for Scott WILLIAMS and Djuan WILLIAMS**

44. An analysis of WESLEY-CARTER's telephone (414-336-1768) identified telephone number 312-459-9431 (**TARGET CELLULAR DEVICE 1**) as a top caller of WESLEY-CARTER. Subscriber information provided by T-Mobile provided no information (blank subscriber data) and an activation date of December 15, 2024. A search of open source databases showed that **TARGET CELLULAR DEVICE 1** is associated with Djuan WILLIAMS. Toll analysis showed that on March 26, 2026, **TARGET CELLULAR DEVICE 1** contacted a Milwaukee Police Department (MPD) Sergeant. On April 7, 2026, case agents contacted the MPD Sergeant regarding the phone call. The MPD Sergeant confirmed that **TARGET CELLULAR DEVICE 1** contacted him and additionally confirmed he knew that phone number to be utilized by Djuan WILLIAMS. Additionally, an analysis performed subsequent to a federally authorized search warrant showed that WESLEY-CARTER's Phone had **TARGET CELLULAR DEVICE 1** listed at "Bro Juan". I believe that **TARGET CELLULAR DEVICE 1** was and still is being utilized by Djuan WILLIAMS.

45. An analysis of WESLEY-CARTER's phone identified telephone number 414-766-3794 (**TARGET CELLULAR DEVICE 2**). Subscriber information provided by T-Mobile shows that **TARGET CELLULAR DEVICE 2** was subscribed to Scott Williams at 2743 N. 29th Street in Milwaukee, Wisconsin. Additionally, an analysis performed subsequent a federally authorized search warrant on WESLEY-CARTER's Phone listed **TARGET CELLULAR DEVICE 2** as "Unc Dump". I believe **TARGET CELLULAR DEVICE 2** was and still is being utilized by Scott WILLIAMS.

## MANNER OF EXECUTION

46. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

47. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **TARGET CELLULAR DEVICES** or receiving signals from cellular devices, including the **TARGET CELLULAR DEVICES**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device(s) may send a signal to the **TARGET CELLULAR DEVICES** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **TARGET CELLULAR DEVICES** and use that information to determine the **TARGET CELLULAR DEVICES**'s locations, even if it is located inside a house, apartment, or other building.

48. The investigative device may interrupt cellular service of phones or other cellular devices within its range. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **TARGET CELLULAR DEVICES**, the device may briefly exchange signals with all phones or other cellular devices in its range. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **TARGET CELLULAR DEVICES**, and law enforcement will limit collection of information from devices other than the **TARGET CELLULAR DEVICES**. To the extent that any information from a cellular device other than the **TARGET CELLULAR DEVICES** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **TARGET CELLULAR DEVICES** from all other cellular devices.

## AUTHORIZATION REQUEST

49. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

50. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET CELLULAR DEVICES** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy

evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

51. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET CELLULAR DEVICES** outside of daytime hours.

52. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

# ATTACHMENT A2

This warrant authorizes the use of the electronic investigative technique described in Attachment B1 to identify the location of the cellular device assigned phone number 414-766-3794, whose wireless provider is T-Mobile and whose listed subscriber is Scott Williams (“Target Cellular Device 2”).

## ATTACHMENT B2

Pursuant to an investigation of Scott WILLIAMS for a violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, this Warrant authorizes the officers to whom it is directed to determine the location of Target Cellular Device 2 by collecting and examining:

1. radio signals emitted by Target Cellular Device 2 for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by Target Cellular Device 2 in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).